## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

SAM'S WEST, INC. and
WALMART APOLLO, LLC

*Plaintiff*,

v.

BJ'S WHOLESALE CLUB HOLDINGS,
INC.,

*Defendant*.

_____/

Case No. 6:22-cv-00587-WWB-GJK

**JURY TRIAL DEMANDED**

### PLAINTIFFS' RESPONSE TO DEFENDANT'S
### MOTION TO DISMISS UNDER RULE 12(B)(6)

Plaintiffs Sam's West, Inc. and Walmart Apollo, LLC, (collectively, "Sam's Club") respectfully oppose the motion to dismiss ("Mot.") filed by Defendant BJ's Wholesale Club Holdings, Inc. ("BJ's"). The Court should deny in its entirety for the reasons below.

I.    **Introduction**

Sam's Club is a world leading retailer whose inventions have revolutionized the checkout process. The four Asserted Patents were granted after a rigorous multi-year examination, including for eligible subject matter. Sam's Club's award-winning Scan & Go product commercially embodies these "novel, elegant technological solutions" for "improving the retail customer's checkout experience." Complaint ("Comp."), ¶ 54.

In 2021, BJ's rolled out a copycat product called "Express Pay." *Id.* ¶¶ 5–6. Express Pay "is strikingly similar to Sam's Club's Scan & Go," "offering nearly identical functionality." *Id.* In response, Sam's Club filed a Complaint spanning 140 pages, excluding the Asserted Patents, which connects BJ's' public documentation for its Mobile

App and Express Pay to each of the Asserted Patents, to show exactly how, as a technical matter, BJ's "infringes the Asserted Patents." *Id.* ¶ 6, 46–60, Ex. 5-8.

Despite this detailed pleading, BJ's alleges that still further allegations of infringement are required at the threshold. But BJ's' copycat product, its actual knowledge of Sam's Club's charge of infringement, and Sam's Club's extensive technical claim charts easily provide "more than a sheer possibility that a defendant has acted unlawfully"—and that is all which must be shown at this preliminary stage. *Bot M8 v. Sony Corp.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). BJ's' motion should thus be denied.

Additionally, BJ's asks the Court to invalidate each Asserted Patent. Mot. at 8-13. BJ's' eligibility challenge fails for two reasons. First, it is procedurally inappropriate to take up BJ's' motion, now, before claim construction and fact discovery have occurred, given basic technical disputes between the parties about the nature of Sam's Club's inventions and their advances over prior technologies in the prior art. Under applicable appellate precedent, the parties' disagreement on the nature of the claimed invention, and the scope and content of the prior art, are both disputes that cannot be resolved on a motion to dismiss prior to claim construction. Similarly, BJ's general discussion of the Asserted Patents, untethered to specific claims, as well as its failure to identify a representative claim, is procedurally fatal to its attempt to invalidate four duly-issued patents.

Second, factual issues with respect to both steps of the eligibility inquiry prevent dismissal at this stage. Indeed, one of the core cases cited by BJ's—*Aatrix v. Green Shades Software*—<u>reversed</u> a Rule 12 eligibility dismissal, applying 11th Circuit law, for reasons indistinguishable from Sam's Club's arguments here. 882 F.3d 1121, 1125 (Fed. Cir. 2018). *Aatrix* explained that a Rule 12 motion should not be granted unless the

accused infringer shows that there are "no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Id.* Here, there are disputes at both steps of the eligibility inquiry that preclude dismissal at this early stage.

With respect to *Alice* Step 1, the Complaint explains how the Asserted Patents are directed to particularized solutions to technological problems that plagued prior technologies. Comp. ¶¶ 26-29, 33-35, 39, 43-44; *cf. TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1287 (Fed. Cir. 2020) (claims addressed to a "specific technique" addressing a "technological problem" are eligible at Step 1 as they are not directed to an abstract idea). For *Alice* Step 2, factual allegations (and the Asserted Patents themselves) demonstrate that the "ordered combination" of claim limitations—that is, each claim when taken as a whole—is not reducible only to a well-understood, routine, and conventional system (which is what BJ's must show at this Step). *Infra* Section IV.B. Indeed, BJ's fails to challenge the claims as a whole, "ordered combination," as required by law, instead focusing only on selective elements. *Id.* At base, the mobile checkout architectures of the '435 and '133 Patents differ drastically from the immobile, traditional checkout hardware, and the '188 and '187 Patents teach the integration of specific hardware and software tools to create a new, inventive "services management framework" that did not exist prior to Sam's Club's patents. *Id.* Accordingly, BJ's' motion should be denied. Finally, if the Court is inclined to grant BJ's' motion, it should be without prejudice to amend, for the reasons set forth in Sam's Club's forthcoming conditional motion to amend.

## II.     Sam's Club Has Stated a Plausible Claim for Direct Infringement

BJ's makes two arguments challenging Sam's Club's direct infringement allegations, but neither is persuasive. First, BJ's' argument that direct infringement and

indirect infringement claims are mutually exclusive (Mot. at 19-22) is inapplicable, because Sam's Club alleges multiple, discrete acts of direct and indirect infringement. The precedent cited by BJ's broadly prohibits double-counting damages: a patentee cannot collect double damages for the same act under both direct infringement and indirect infringement. But Sam's Club's pleads different acts of infringement, under separate counts and statutory provisions, for direct and indirect infringement. For direct infringement, Sam's Club's alleges that BJ's performs the claimed limitations. For example, with respect to claim 1 of the '133 Patent, Sam's Club attaches claim charts showing that BJ's is "executing a first application," "receiving, on the server…identification information," and the remaining steps of claim 1. *See* Comp. ¶ 87-88, Ex. 6. By contrast, Sam's Club's induced infringement allegations focus on a different act of infringement: encouraging others, like its customers, to perform the infringing steps. *Id.* ¶¶ 93-95. There, BJ's' act of infringement is the act of inducement, which is a separate act of infringement distinct from directly performing the claimed method. *Compare* 35 U.S.C. § 271(a) (direct infringement), *with id.* § 271(b) (inducement). Similarly, Sam's Club's contributory infringement claim asserts that even if BJ's does not perform all limitations of claim 1, it makes, uses, and offers a component—the software modules in Express Pay, which are a component in the larger BJ's mobile application—that contribute to infringement. *Id.* § 271(c).[1]  These allegations are "enough to raise a right to relief above the speculative

---

[1] BJ's principal authority to the contrary—a 1998 district court case called *Johnson v. Pro-Line*—is a "summary-judgment stage" decision that has been rejected as inapplicable to the pleadings, and even at summary judgment does not prohibit relying on the same device (i.e., Express Pay) to prove infringement. *Marposs Societa Per Azioni v. Jenoptik Auto.*, 262 F. Supp. 3d 611, 619, 620 (N.D. Ill. 2017) ("*Johnson*[]…did not hold that direct and indirect claims cannot be based on the same *device*.") (emphasis in original).

level," given the guidance from the Federal Circuit that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bot M8 v. Sony Corp.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).

Second, BJ's argues that Sam's Club's direct infringement claims should be dismissed for claiming divided infringement, because "at least four actors—the server, the mobile self-checkout application, the mobile phone, and an optical scanning machine—are involved." Mot. at 13-16. But divided infringement does not apply to the Asserted Patents because the claim language refers to four *instrumentalities*, not four *actors*. That difference is material, because the divided infringement doctrine imposes additional requirements when a patentee seeks to impute vicarious liability from one actor to another actor. *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1383–84 (Fed. Cir. 2017). Here, Sam's Club accuses only one actor of direct infringement, by alleging infringement based on *BJ's'* server, *BJ's'* application, and *BJ's'* optical scanning machine. *E.g.*, Comp. Ex. 6 at 29-31. Contrary to BJ's' suggestion, the claims do not recite a "sending" step from a mobile device, and instead focus on "the server"—BJ's' server—"receiving" the relevant information, which does not implicate divided infringement. *Cf. Intellect Wireless, Inc. v. T-Mobile USA*, 735 F. Supp. 2d 928, 938 (N.D. Ill. 2010) (even if "a predicate act" is required, "the claim does not necessarily require the conduct of multiple actors" unless "that predicate act is described in the claim"). BJ's' contrary claim is "a claim construction and non-infringement argument, rather than a pleading requirement." *WhereverTV v. Comcast Cable*, 2019 WL 718576, at *5 (M.D. Fla. Feb. 20, 2019).

III.     **Sam's Club Has Stated A Plausible Claim for Indirect Infringement**

A.  **Express Pay Is a Contributorily-Infringing Software Module With No Substantial Non-Infringing Uses**

"[S]oftware systems may be the relevant component for contributory infringement."

*Motiva Pats. v. Sony Corp.*, 408 F. Supp. 3d 819, 835 (E.D. Tex. 2019) (collecting cases

from the Supreme Court and Federal Circuit). Here, Sam's Club alleges that the software

modules which are executed by Express Pay are a component of BJ's' application that

has no other function, beyond infringement. Comp. ¶¶ 79, 101, 123, 145 (Express Pay is

"especially adapted" to perform infringing functions). At the pleadings, an "allegation that

the pertinent software does not perform other functions is enough." *Motiva*, 408 F. Supp.

3d at 836. Sam's Club's allegations closely track the allegations in *Nalco Co. v. Chem-*

*Mod, LLC* and suffice to reject BJ's' challenge. 883 F.3d 1337, 1357 (Fed. Cir. 2018). In

*Nalco*, the Federal Circuit approved an allegation that a chemical additive "has no other

use" except for an infringing use, and thus has "no substantial non-infringing use." *Id.* It

required no more at this early stage. *Id.*

Here, Sam's Club's allegations are stronger than *Nalco*'s. Sam's Club alleges that

BJ's' application has no other use for Express Pay "except to use those" software modules

to perform checkout activities that are plausibly pled as infringement. *Nalco*, 883 F.3d

1357; Comp. ¶¶ 79, 101, 123, 145. Unlike *Nalco*, which involved chemical additives that

could be used for other purposes, the software accused by Sam's Club can only perform

the infringing functions because of its nature as software (e.g., software is a set of written

instructions to a computer). *Ricoh Co. v. Quanta Computer*, 550 F.3d 1325, 1338 (Fed.

Cir. 2008) (contributory infringement may be found even when an infringing software

component "is bundled together with something else"); *Lucent Techs. v. Gateway, Inc.*,

6

580 F.3d 1301, 1321 (Fed. Cir. 2009) (finding contributory infringement based on "date-picker" software tool within Microsoft Outlook, even though Microsoft Outlook had other, non-infringing functions). Sam's Club has extensively documented how the coded functions of Express Pay are infringing in the claim charts attached to the Complaint. Comp. Ex. 5-8. Indeed, it is unclear what else Sam's Club should be required to factually allege. *IOENGINE, LLC v. PayPal Holdings, Inc.*, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019) (Bryson, Circuit J.) ("A simple allegation that the product at issue is not suitable for substantial non-infringing use is generally sufficient to satisfy the pleading requirements of *Twombly* and *Iqbal.*"). Here, Sam's Club alleges Express Pay is designed, as a technical matter, to practice the invention in each Asserted Patent. Comp. ¶¶ 79, 101, 123, 145; *Lucent*, 580 F.3d at 1321 (approving same argument). Between that and Sam's Club's extensive claim charts documenting how Express Pay infringes, Sam's Club's allegations are enough under *Nalco* and *IOENGINE*. More "cannot reasonably be required at the pleadings stage for a software component," because BJ's' source code is not publicly available. *Motiva*, 408 F. Supp. 3d at 835–36 & n.6.

### B. Sam's Club Plausibly Pled Knowledge and Intent for Indirect Infringement

Sam's Club has adequately pled the intent requirements for indirect infringement based on the striking similarity between BJ's' Express Pay offering and the Asserted Patents. Because a patentee will only have circumstantial evidence of subjective intent prior to discovery, "[t]he requisite knowledge may also be circumstantially inferred from the fact that the accused product or component has no substantial noninfringing use." *Motiva*, 408 F. Supp. at 830. "[W]hen a defendant has designed a product that does **nothing** other than infringe an asserted patent, it is at least ***plausible*** to infer that the

defendant knew of the asserted patent and intended its products to perform in a manner that was infringing." *Id.* (emphasis original)

*Motiva* follows the Federal Circuit's seminal decision in *Ricoh Co. v. Quanta Computer, Inc.*, which offered an identical rationale in the context of summary judgment. 550 F.3d 1325, 1338 (Fed. Cir. 2008). In reversing on the intent elements for indirect infringement, the Federal Circuit explained that: "When a manufacturer includes in its product a component that can *only* infringe, the inference that infringement is intended is unavoidable." *Id.* (emphasis original). Thus, "it is entirely appropriate to presume that one who sells a product containing *a component that has no substantial noninfringing use* in that product does so with the intent that the component will be used to infringe." *Id.* (emphasis original) (presumption of intent applies even "in such cases where an infringing component is bundled together with something else"). Applying *Ricoh* to the pleading context, *Motiva* explained: "An inference that is 'unavoidable' for purposes of a motion for summary judgment is also 'plausible' for purposes of a motion to dismiss." 408 F. Supp. 3d at 834. Here, Sam's Club pled that as a technical matter, Express Pay is "especially adapted to practice" the Asserted Patents, Comp. ¶¶ 79, 101, 123, 145, giving rise to the "unavoidable" "inference that infringement is intended." *Ricoh*, 550 F.3d at 1338.

Sam's Club also asserts that Express Pay bears a striking similarity to Sam's Club's commercial product, Scan & Go, which antedates BJ's' product in the market. Comp. ¶¶ 3-6. The similarity between Sam's Club's successful product and BJ's' copycat product, as well as the similarity between Express Pay and the Asserted Patents, are easily "sufficient to cross the federal court's threshold" and to plausibly suggest that BJ's intentionally infringed the Asserted Patents—or, at a minimum, was willfully blind to its

infringement. *Motiva*, 408 F. Supp. 3d at 826. That is especially true because information relating to BJ's' subjective intent is in BJ's' unique possession and control. *Id.* "[P]articularly where the relevant information is beyond the access of the plaintiff, courts should generally permit discovery to proceed unless the complaint recites no more than sheer speculation about the plaintiff's entitlement to relief." *Id.* at 827. Sam's Club's technical allegations and copying allegations far exceed "sheer speculation" and suffice at this stage. *See id.*[2]

As a separate basis, the knowledge and intent requirements for indirect infringement are met "by the service of the complaint." *IOENGINE*, 2019 WL 330515, at *4 (Bryson, Circuit J.). Circuit Judge Bryson held that a claim of induced infringement will "past muster under Federal Rule of Civil Procedure 8" when a plaintiff offers allegations of "infringing conduct," combined with "the notice afforded by service of the original complaint, and the apparent decision to continue the inducement post-service" of the complaint. *Id.* Sam's Club's allegations here are indistinguishable: in addition to stating "detailed allegations of direct infringement"—which BJ's does not challenge for lack of detail—Sam's Club alleges inducement based on ongoing "deliberate" infringement "since receiving such notice would infringe and actively induce and contribute to the infringement" of the Asserted Patents. Comp. ¶¶ 74, 80, 96, 102, 118, 124.

Sam's Club recognizes that there is a split among district courts over whether a patentee may rely on a complaint to provide the relevant knowledge of the asserted

---

[2] The Federal Circuit has expressly rejected BJ's claim that willful blindness is inapplicable to contributory infringement. *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016)); *Motiva*, 408 F. Supp. 3d at 830 ("[T]he Federal Circuit has confirmed that the holding in *Global-Tech* also applies to 'contributory infringement under § 271(c).' *Warsaw Orthopedic*, 824 F.3d at 1347.").

patents. But the majority rule is that a patentee's intentional, continued infringement after service of a complaint is sufficient to state a claim for the intent elements of indirect infringement. *Intellicheck Mobilisa, Inc. v. Honeywell Int'l*, 2017 WL 5634131, at \*11 & n.9 (W.D. Wash. Nov. 21, 2017) ("The majority of district courts have held that post-suit knowledge satisfies the knowledge element for indirect infringement."). The handful of decisions to the contrary are non-binding, contrary to the inducement statute, and importantly, were rendered without the benefit of the Federal Circuit's guidance in *TecSec*, which reversed a decision to exclude post-suit intent evidence. [3]

Circuit Judge Bryson's decision, applying *Nalco*, addresses the concern that undelay contrary district court decisions. Though some courts expressed concern about using a complaint to invent a new cause of action, Judge Bryson explained that it is not the Complaint as such, but the infringer's "apparent decision to continue the inducement post-service" that gives rise to the inducement claim. *IOENGINE*, 2019 WL 330515, at \*4. Likewise, a sister court recently explained: "what matters is that the putative infringer has knowledge of the patents-in-suit and continues to allegedly infringe with that knowledge, whether that knowledge is obtained through pre-suit or post-suit." *Merrill Mfg. v. Simmons Mfg.*, 553 F. Supp. 3d 1297, 1303 (N.D. Ga. 2021).

So too here—BJ's' choice "to continue the inducement," despite its knowledge that Express Pay infringes, is enough to deny its motion. *RightQuestion v. Samsung Elecs.*, 2022 WL 507487, at \*3 (E.D. Tex. Feb. 18, 2022) (rejecting motion to dismiss pre- and

---

[3] The Federal Circuit reversed a district court's ruling "to preclude" the patentee "from introducing evidence of post-March 3, 2011 inducement of infringement" related to intent, for a case "brought…in 2010." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1287 (Fed. Cir. 2020). *TecSec* recognizes that post-suit intent evidence is not only relevant, but material, such that exclusion is reversible error.

post-suit inducement as "premature at this early stage" because "Defendant had knowledge for at least <u>some</u> time during the infringement period").

Sam's Club has specific factual allegations articulating BJ's' actual notice of the Asserted Patents and detailing BJ's' knowledge and intent to infringe. Neither Rule 12 nor the inducement statute limit reliance on the Complaint as evidence of intent for inducement. Consistent with the procedural posture of this challenge and *TecSec*, those specific allegations (when credited) suffice to state a claim.

## IV.     <u>BJ's Has Failed to Carry Its Burden On Its Eligibility Defense</u>

BJ's seeks to invalidate the Asserted Patents prior to fact discovery, prior to expert discovery, prior even to defining the words of the claims, and notwithstanding the substantial factual allegations in Sam's Club's Complaint which show that its patents claim innovations relative to the prior art. Applicable precedent forecloses BJ's' attempt at any juncture, but particularly this early juncture. "[A]ccused infringers invoking section 101 in a Rule 12(b)(6) motion face an uphill scrabble." *Mirror Imaging, LLC v. PNC Bank*, 2022 WL 229363, at *4 (W.D. Tex. Jan. 26, 2022). Sam's Club's patents—which were examined for eligibility under the applicable *Alice* standard—are "presumed valid," and "[o]vercoming that presumption demands clear and convincing evidence, even in the eligibility context." *Id.* (citing *Cellspin v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019)).

The Supreme Court's decision in *Alice v. CLS Corp.* outlines the proof that BJ's must provide to prevail its affirmative defense of ineligible subject matter. First, BJ's must prove that the Asserted Claims are "directed to" an abstract idea. Critically, a claim that is directed to a "specific technique" addressing a "technological problem" in the prior art is <u>not</u> directed to an abstract idea. *TecSec*, F.3d at 1293 For example, "a 'particular manner' of processing 'a limited set of information' in order to make 'a specific

improvement over prior art systems'" is eligible subject matter. *PPS Data v. Jack Henry & Assocs*, 404 F. Supp. 3d 1021, 1044 (E.D. Tex. 2019).

Second, BJ's must prove that the Asserted Claims do not have an "inventive concept," and instead embody only "well-understood, routine, and conventional" subject matter, judged from the perspective of a person of ordinary skill in the art of the Asserted Patents. *BASCOM Glob. Internet Servs. v. AT&T Mobility*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). "[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.*    Thus, "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *Id.* Even if a defendant shows individual elements were known, it fails to carry its burden when it is "lacking an explanation of a reason to combine the limitations as claimed." *Id.*

Both *Alice* Step 1 and *Alice* Step 2 may be implicated by allegations in a complaint. "In *Aatrix Software, Inc. v. Green Shades Software, Inc.*, for example, the Federal Circuit acknowledged how factual issues undergird both *Alice* steps." *Mirror Imaging*, 2022 WL 229363, at *4 (citing *Aatrix*, 882 F.3d at 1121). "And because a court considering a Rule 12(b)(6) motion must accept a complaint's factual allegations as true, a complaint can recite concrete allegations regarding *Alice*'s underlying factual issues to guard its asserted patents from an early ineligibility determination." *Id.* Notably, BJ's also cites *Aatrix* but omits that it reversed a Rule 12 decision that failed to credit a patentee's allegations. *Aatrix*, 882 F.3d at 1125. Following *Aatrix*, courts hold that "[i]nsufficient discovery can…affect a court's validity analysis because 'whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a

factual determination.'" *AML IP v. Bed Bath & Beyond*, 2022 WL 1085617, at *4 (W.D. Tex. Apr. 11, 2022). "Therefore, resolving § 101 eligibility of all asserted claims almost certainly requires fact discovery." *Id.*

### A. BJ's' Challenge is Procedurally Deficient and Premature

First, BJ's fails to identify which claims, in particular, it is challenging, instead citing the Asserted Patents generally. Because "each claim must be presumed independently valid" by statute, "[t]he initial burden of persuasion rests on the defendant to identify a rationale for treating a given claim or claims as representative of other asserted claims." *PPS Data*, 404 F. Supp. 3d at 1030. The representative claim inquiry safeguards "procedural due process" because "[a]n incorrect decision finding a claim representative" risks "invalidating a property interest that is not truly presented before the Court." *Id.* Thus where, as here, a party fails to analyze whether any claim is representative of the entire patent, courts deny its motion. *Id.*; *Roku v. Almondnet Inc.*, 1:21-cv-1035, ECF No. 35 (D. Del. May 10, 2022) (denying motion). BJ's' motion does not discuss, let alone prove, representativeness. Thus, it should be denied "without prejudice to renew at summary judgment" on "the § 101 issues." *Id.*

Second, the absence of claim construction—where the Court defines the terms of the patent, receives technology tutorials from the parties, and otherwise digs into the nature of the claimed inventions—is an independent reason to deny BJ's' motion. "[T]he Federal Circuit has instructed that '[d]etermining patent eligibility requires a full understanding of the basic character of the claimed subject matter.'" *AML*, 2022 WL 1085617, at *3 (quoting *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir.

2019)). Thus, "[i]t will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis." *Id.*

As detailed below, BJ's' motion fails to analyze even one full claim of the Asserted Patents. BJ's focuses only on some (but not all) limitations, which is insufficient to prove its eligibility defense. BJ's omits key terms and limitations, including those Sam's Club relies on for eligibility purposes in the Complaint. For example, claim 1 of the '133 Patent discloses integration of "a state container"—a particular type of software tool—that is "within the first application on the server." Comp. Ex. 2, '133 Patent, at Claim 1. But the words "state container" do not appear in BJ's' motion, which does not at all grapple with the integration of the "state container" with server-side processing. *Cf.* Comp. ¶ 35 (alleging that the server-side state container confers inventive benefits). The same is true of the other claims—BJ's' only mention of the integrated "services management framework, mapping function, and dynamically-generated machine readable element" of the '188 Patent is to reference the Complaint's allegation that those services, when taken together, confer benefits relative to prior technologies. Mot. at 13. BJ's does not articulate its view of what a "services management framework" and "mapping function" are, let alone prove that they are reducible only to well-understood, routine, and conventional technology. *Aatrix*, 882 F.3d at 1125. Similarly, claim 1 of the '435 Patent embraces 13 discrete steps for the purpose of "converting a mobile phone into a mobile point-of-sale device," but BJ's discusses virtually none of them individually (e.g., the claim language "virtual terminal" and "virtual terminal sales application" do not appear in BJ's' briefing), and BJ's certainly does not discuss the limitations as a collective whole.

The Court's standard patent case management order has an established process for defining terms—the claim construction process—which gives the Court the necessary "understanding of the basic character of the invention." *MyMail*, 934 F.3d at 1379. The Court should allow that process to play out in the normal course; BJ's offers no justification for departing from that ordinary course. BJ's' motion does not even discuss what the terms of the Asserted Patents mean, let alone prove that they equate only to factually conventional subject matter. BJ's thus fails to provide the Court with the necessary "understanding of the basic character of the invention," which is a sufficient basis to deny on the motion. *MyMail*, 934 F.3d at 1379; *AML*, 2022 WL 1085617, at *4 (same); *Cronos Techs., LLC v. Expedia, Inc.*, 2015 WL 5234040, at *3 (D. Del. Sept. 8, 2015) (Stark, Circuit J.) (denying Rule 12(c) motion) ("Defendants must provide at least *some* meaningful analysis for *each* of the challenged claims.") (emphasis original).

Third, as Circuit Judge Stark has explained, taking up eligibility after fact and expert discovery have occurred will give the Court a full record. *Cronos*, 2015 WL 5234040, at *3. This is important, because the Court may not determine eligibility pre-discovery if "there is *any* set of facts that could be proven that would result in the challenged claims being patent-eligible." *Id.* ("The briefing and evidence now before the Court are not adequate to permit a definitive answer to these questions at this stage."); *AML*, 2022 WL 1085617, at *4 (following Circuit Judge Stark's *Cronos* decision as "fact discovery can affect a § 101 analysis"); *Mirror Imaging*, 2022 WL 229363, at *4 (same).

Fourth, BJ's' analysis is improper because it characterizes the invention only by (selectively) quoting portions of the specification. But the eligibility inquiry "must focus on the language of the Asserted Claims themselves," not the specification. The Federal

Circuit has "reiterated the Supreme Court's caution against 'overgeneralizing claims' in the § 101 analysis, explaining that characterizing the claims at 'a high level of abstraction' that is 'untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.'" *TecSec*, 978 F.3d at 1293  (quoting *Enfish v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016)). Accordingly, "courts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." *Id.* (quoting *McRO v. Bandai Namco Games America*, 837 F.3d 1299, 1313 (Fed. Cir. 2016)).[4]

BJ's engages in precisely the analysis prohibited by *TecSec* and characterizes the invention at a high level of generality, abstracted away from the constraints imposed by the particularized limitations required by the Asserted Claims. BJ's also fails to discuss the collective effect of the "ordered combination" of elements. This is fatal to BJ's' motion. *PPS Data*, 404 F. Supp. 3d at 1039–40 ("Consideration of the unique and inventive results of the 'ordered combination' of elements—even *individually known* elements—is essential"). Because BJ's fails to analyze each element of the claims, and further fails to consider the "ordered combination" of elements as a whole, its motion must be denied.

### B.  BJ's' Challenge Fails Because Factual Issues Preclude Dismissal

A sister court in the 11th Circuit recently rejected a similar eligibility challenge in

---

[4] Defendant's selective quotation of the specification is not only legally misplaced—the relevant focus must be on the claims—but it is also factually misplaced. Defendant's suggestion that "these Patents take great pains" to admit their own invalidity, Mot. at 9, is perplexing—why would a patentee do that and why would a Patent Office allow such a patent? In reality, the specification expressly explains that Defendant's quoted language addresses only "[s]ome of the acts and operations" that form a part of the claims; nothing in the specification states that the claimed combination of elements is known in the prior art, let alone so known as to be well-understood, routine, and conventional. Comp. Ex. 2 at 3:31–36.

light of comparable  factual allegations. While acknowledging that it "could spend copious amounts of time sifting through the many arguments presented," the Court found the simplest way through: "there is no need to do so when there are obvious issues of fact that preclude the dismissal." *Decurtis LLC v. Carnival Corp.*, 2021 WL 1968327, at *11–12 (S.D. Fla. Jan. 6, 2021). The Court considered arguments virtually identical to those made by BJ's. The *Decurtis* defendant asserted that because a patentee used Bluetooth beacons, and beacons are conventional, the defendant concluded that the patents must not be eligible. *Id.* However, given the patentee's "allegation that [the patentee's] <u>use</u> of a [Bluetooth] beacon is an entirely new system previously unknown to the industry," the Court denied the motion. *Id.* The patentee alleged that "[t]he overall arrangement of this system, which was not well- understood, routine, or conventional at the time Carnival conceived it, was an inventive concept," which the Court credited, as it must. *Id.* The Court explained, "[i]f true, this allegation undermines dismissal at step two because—even if we assume that the [asserted] patent is an abstract idea at step one—there are well-pleaded allegations that the elements of this device are not well-understood, routine, or conventional activity." *Id.*

The same rationale precludes dismissal here—Sam's Club pleads far more robust factual allegations with respect to all four Asserted Patents. Comp. ¶¶ 26-29, 33-35, 39, 42-44. With respect to the '435 and '133 Patents, Sam's Club alleges that use of a mobile self-checkout terminal as disclosed in the claims differs from "conventional checkout technologies," which "require the use of dedicated hardware at a static, singular, and inflexible locations" that must each have local processing capacity. *Id.* ¶¶ 26, 29. By contrast, the '435 and '133 Patents eliminate the need for "a specific checkout location or

hardware dedicated exclusively to checkout" and "allow[] retailers to streamline and eliminate many or most of their peripheral hardware needs associated with conventional checkout terminals, fundamentally altering—and improving—the conventional checkout process." *Id.* ¶¶ 27-29, 34. The claimed server-side processing also effectuates an improvement in computer technology (implicating *Alice* Step 1) by allowing for the centralization of computing resources. *Id.* ¶ 35. These efficiency gains transform the conventional process, and do not merely automate it without alteration, which also implicates *Alice* Step 2. *PPS Data*, 404 F. Supp. 3d at 1040, 1043–44 (claims eliminating need for traditional, dedicated scanning hardware created a fact question about existence of an inventive concept at summary judgment).

Similarly, the '188 Patent and '187 Patent offer particularized software and hardware architectures that, when "integrated," improve on existing technologies—as the Patent Office found. Comp. ¶ 38-39, 42-44. BJ's' contrary view runs afoul of Federal Circuit case law that has rejected similar attempts to oversimplify patented inventions. *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1304 (Fed. Cir. 2019). Faced with an argument that "that the asserted claims are so general that they encompass steps that people can 'go through in their minds,'" the Federal Circuit disagreed. *Id.* "This is not the type of human activity that § 101 is meant to exclude…. [T]he human mind is not equipped to detect suspicious activity by using network monitors and analyzing network packets as recited by the claims." *Id.*

So too here. The human mind is not equipped to implement a "service management framework" configured with mapping functions and engaging with "a plurality of location-specific computing devices" which can "dynamically map" "location-

18

tailored services." Comp. ¶¶ 39, 43. These steps "could not, as a practical matter, be performed <u>entirely</u> in a human's mind" because the claims enable "real-time" management architectures that humans could not perform, and are thus eligible. *USAA v. Wells Fargo Bank*, 414 F. Supp. 3d 947, 958 (E.D. Tex. 2019). As in *USAA*, Sam's Club's claims involve "<u>removing</u> the once-necessary human intervention," which furnishes "an 'improvement in the functioning of a'…device" and "is not directed to an abstract concept." *Id.* (applying *SRI* to find that a patent directed to auto-capture for mobile check deposit to be eligible because "a claim directed to allowing a machine to select and capture an appropriate picture is not adding a generic computer component to a fundamentally human process").

Similarly, the '188 and '187 Patents entail "removing the once-necessary human intervention" by implementing specific technological tools (e.g., a "machine-readable element generator" and "location-specific computing devices") that are integrated into a new software and hardware system (e.g., "services management framework"). While the human mind may generally be capable of "monitoring the status of an order," Mot. at 11, this is a drastic oversimplification of the claims. The human mind "is not equipped, particularly in real-time" to use "objective, technological criteria" to generate and render data "acceptable for subsequent machine recognition." *Cf. USAA*, 414 F. Supp. 3d at 958. Humans are similarly "not equipped" to employ the '188 and '187 Patents' use of the claimed "machine-readable element generator" and "location-specific computing devices" as arranged with the claimed "services management framework." *See id.* And, as the Complaint notes, the "integration of the claimed services management framework, mapping function, and dynamically-generated machine-readable element" were "neither

known" in the art prior to the invention date for the '188 and '187 Patents, nor "conventional" at that time. Comp. ¶¶ 39, 44. Critically, BJ's does not discuss the state of the art keyed to each Asserted Patent's specific priority date; BJ's impermissibly makes general assertions about technology, rather than focusing on the specific state of the art "at the time [Sam's Club] conceived" of each invention. *Decurtis*, 2021 WL 1968327, at *11–12. At best, BJ's factually disagrees with Sam's Club's view of the prior art. BJ's factual challenge, untethered from the date and state of the art, is not a pleading issue.

## V.    <u>Conclusion</u>

BJ's' pleading challenges fail. Sam's Club's Complaint alleges significant technical detail showing that BJ's infringes Sam's Club's patents and copied Sam's Club's product. BJ's eligibility defense suffers serious procedural flaws, but also fails because Sam's Club's duly-issued patents claim inventive technologies that improve on conventional tools. Accordingly, BJ's' motion is due to be denied.

Dated: May 20, 2022

Kathryn Riley Grasso (*Pro Hac Vice*)
Christian Chessman (*Pro Hac Vice*)
Henry R. Fildes (*Pro Hac Vice*)
**DLA Piper LLP (US**)
500 Eighth Street NW
Washington, DC 20004
Tel: (202) 799-4000
Email: kathryn.riley@us.dlapiper.com
Email: christian.chessman@us.dlapiper.com
Email: henry.fildes@us.dlapiper.com

Respectfully submitted,

/s/ *Ardith Bronson*
Ardith Bronson (FBN 423025)
**DLA Piper LLP (US)**
200 South Biscayne Blvd. Ste. 2500
Miami, Florida 33131
Email:
ardith.bronson@us.dlapiper.com

Patrick Park (admitted *pro hac vice*)
**DLA Piper LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA
Tel: (310) 595-3000
Email: patrick.park@us.dlapiper.com

***Attorneys for Plaintiffs***