UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SAM'S WEST, INC. and
WALMART APOLLO, LLC,

        Plaintiffs,

v.                                                Case No: 6:22-cv-587-WWB-DAB

BJ'S WHOLESALE CLUB
HOLDINGS, INC.,

        Defendant.

## ORDER

This cause came on for consideration with oral argument on the following motion:[1]

> **MOTION:** DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING INTER PARTES REVIEW (Doc. No. 91)
>
> **FILED** September 26, 2022
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED in part and DENIED in part**.

---

[1] Defendant's Motion to Dismiss (Doc. 54) and Plaintiffs' Motion to Compel Discovery (Doc. 85) are also pending. Based on the temporary stay, a separate Report and Recommendation will be entered that the motion to dismiss be denied without prejudice to reassertion after the stay is lifted. The motion may be modified as appropriate in light of circumstances at that time. Similarly, the motion to compel will be denied without prejudice. This will conserve judicial resources and avoid rulings on issues that may be moot or altered due to the *inter partes* review process.

## I.     BACKGROUND

Plaintiff Sam's West, Inc., is a Delaware corporation with its principal place of business in Bentonville, Arkansas. Doc. No. 83 ¶ 14. Plaintiff Walmart Apollo, LLC, is a Delaware limited liability company with its principal place of business also in Bentonville, Arkansas. *Id.* ¶ 15. Plaintiffs (or collectively "Sam's Club") have 46 locations in Florida, including at least four within the Orlando Division of the Middle District of Florida. Doc. No. 1 ¶ 7. Walmart Inc. is the parent company of Sam's Club. Doc. No. 83 at 1. Defendant BJ's Wholesale Club Holdings, Inc., is a Delaware corporation with at least 35 locations in Florida and its principal place of business in Westborough, Massachusetts. Doc. No. 83 ¶¶ 16, 20. Sam's Club and BJ's are direct competitors in the market of membership discount stores.

Between 2018 and 2020, the United States Patent and Trademark Office (the "USPTO") issued four patents currently owned by Walmart Apollo, LLC and described by Defendant as the following:

1. METHOD FOR SELF-CHECKOUT WITH A MOBILE DEVICE, US PAT 10121133, issued on November 6, 2018, which claims a specific method of using a mobile device to conduct mobile self-checkout on a server without the need of peripheral hardware (the '133 Patent);

2. METHOD FOR SELF-CHECKOUT WITH A MOBILE DEVICE, US PAT 10803435, issued on October 13, 2020, which claims a specific method of using a mobile device to conduct mobile self-checkout without the need of an immobile checkout location (the '435 Patent);

2

3. SYSTEMS AND METHODS FOR IDENTIFYING AVAILABLE LOCATION-BASED SERVICES, US PAT 10368187, issued on July 30, 2019, which claims location-specific technology that may be utilized with a secondary services management framework to provide geographically customized services to consumers within a retail store (the '187 Patent); and

4. SYSTEMS AND METHODS FOR IDENTIFYING LOCATION-BASED SERVICES, US PAT 10368188, issued on July 30, 2019, which claims a method to integrate the services management framework and the location technology into a set of systems (the '188 Patent).

Doc. No. 54 at 3-4; *see* Doc. Nos. 83-1 to 83-4. Sam's Club is the exclusive licensee of the four patents. Doc. No. 83 ¶¶ 34, 40, 47, 55.

According to Plaintiffs, "[b]eginning more than a decade ago, Sam's Club, along with parent company Walmart Inc. ("Walmart"), pioneered novel methods for effectuating . . . faster, easier, and more convenient, check-out processes for retail customers." Doc. No. 83 ¶ 1. "Sam's Club patented technology, for example, allows customers to convert their mobile devices into mobile point-of-sale devices and execute check-out without having to go to a traditional casher or self-checkout station." *Id.* "Sam's Club's patented technology also, in one embodiment, makes use of a customer's mobile device to identify location-based retail services, which might include purchasing goods and services, processing a pharmacy order, an electronic receipt (*i.e.*, an e-receipt) from a purchase, and returning an item from the e-receipt." *Id.* Sam's Club's mobile application, called "Scan & Go," is "a free feature that allows

Sam's Club members to scan products while shopping in-store and make payments in the [application] without having to go through a checkout line." *Id.* ¶ 3.

According to Plaintiffs, in November 2017 Defendant released its mobile application (the "BJ's Mobile App"), and in 2021 Defendant "released its Express Pay functionality included as part of the BJ's Mobile App." *Id.* ¶ 5. "Express Pay enables BJ's Wholesale Club members to scan items using BJ's Mobile App as they shop to make checkout faster." *Id.*

## II. PROCEDURAL HISTORY

On March 22, 2022, Plaintiffs filed suit alleging that Defendant infringed the four patents "through [Defendant's] development, use, and commercialization of the BJ's Mobile App and BJ's Express Pay." Doc. No. 1. On April 29, 2022, Defendant filed under Federal Rule of Civil Procedure 12(b)(6) a Motion to Dismiss (Doc. No. 35), which Plaintiffs opposed on May 20, 2022 (Doc. No. 36). On May 23, 2022, Plaintiffs sought leave to amend its Complaint (Doc. No. 37), which Defendant opposed (Doc. No. 48). At Defendant's request, the Court held a preliminary pretrial conference on June 6, 2022. Doc. Nos. 46, 47, 57. On June 8, 2022, the Court entered a Case Management and Scheduling Order, *inter alia,* scheduling a claim construction hearing for January 18, 2023, and jury trial for May 6, 2024. Doc. No. 51. Notably, this trial setting is some ten months after the close of all discovery and nine months after the dispositive motion deadline.

4

On June 8, 2022, the Court granted Plaintiffs' motion to amend their Complaint and so denied as moot Defendant's Motion to Dismiss. Doc. No. 49. On June 13, 2022, Plaintiffs filed their Amended Complaint. Doc. No. 52. Defendant filed under Rule 12(b)(6) its Motion to Dismiss the Amended Complaint on June 27, 2022 (Doc. No. 54), which Plaintiff opposed on July 18, 2022 (Doc. No. 62), and to which Plaintiff replied on August 5, 2022 (Doc. No. 67).

On August 30, 2022, Defendant filed its Notice of Filing of Petition for *Inter Partes* Review ("IPR") of the '133 Patent with the USPTO's Patent Trial and Appeal Board ("PTAB"), asserting that all claims of the '133 Patent are invalid. Doc. No. 74. On September 6, 2022, Defendant filed its Notice of Filing of Petition for *Inter Partes* Review of the '187 Patent with the PTAB, asserting that all claims of the '187 Patent are invalid. Doc. No. 76. On September 7, 2022, Defendant filed its Notice of Filing of Petition for *Inter Partes* Review of the '188 Patent with the PTAB, asserting that all claims of the '188 Patent are invalid. Doc. No. 77. On September 23, 2022, Defendant filed four Notices of Filing of Petitions for *Inter Partes* Review of the '435 Patent with the PTAB, asserting that all 19 claims of the '435 Patent are invalid. Doc. Nos. 86-87, 89-90.

The Court held a hearing on September 13, 2022, on Defendant's Motion to Dismiss the Amended Complaint where the Court, among other things, directed

Plaintiffs to file a corrected Amended Complaint Doc. No. 81.[2] On September 19, 2022, Plaintiffs filed a Corrected First Amended Complaint. Doc. No. 83.

On September 22, 2022, Plaintiffs filed a Motion to Compel narrative responses to Plaintiffs' Interrogatories Nos. 2, 5, 6, and 11 (Doc. No. 85), and Defendant filed its opposition on September 29, 2022 (Doc. No. 94). That motion is pending.

On September 26, 2022, Defendant filed a Motion to Stay Proceedings Pending *Inter Partes* Review (Doc. No. 91), which Plaintiffs opposed on October 11, 2022 (Doc. No. 96). The Motion was referred to the undersigned on September 27, 2022, (*see* 28 U.S.C. § 636 and Local Rule 1.02) and oral argument on the motion to stay proceedings was held on November 1, 2022. Doc. Nos. 100, 104-05.

The parties are scheduled to complete mediation by December 6, 2022. Doc. No. 103. On September 23, 2022, the parties filed their Joint Claim Construction Statement. Doc. No. 88. On October 21, 2022, Plaintiffs filed a claim construction brief. Doc. Nos. 101, 102. Defendant's response is due November 21, 2022. Doc. No. 51. The parties have continued with some discovery and other pretrial matters.

III.   **AMERICA INVENTS ACT and INTER PARTES REVIEW**

---

[2] This was done to correct certain minor and inadvertent, non-substantive errors. The Court directed that the Motion to Dismiss stand with respect to the corrected pleading.

From the time of the country's founding, the legal framework for implementing the Constitutional mandate "To promote the Progress of Science and useful Arts, by securing for limited Times to . . . Inventors the exclusive Right to their respective . . . Discoveries," has been an evolving mosaic of patent statues, executive agency authority and judicial rulings and judgments.

Pursuant to statutory authority, inventors may apply to the United States Patent and Trademark Office to seek a patent to protect an invention claimed to meet statutory criteria. Decisions by the USPTO are subject to review in federal court, and patents may be the basis for civil litigation against alleged infringers. 28 U.S.C. § 1338 grants federal courts original and exclusive jurisdiction of civil actions "arising under any Act of Congress relating to patents."

Through the centuries the interplay between the three branches of government in shaping patent law, both substantively and procedurally, has changed and developed to a remarkable degree. It is beyond the scope of the matters before the Court on this motion to review this history in any detail.[3] Suffice it to say that there has been a continuing tension in the decision and policy making prerogatives of the legislature, executive agencies, and the courts in determining and applying patent law,

---

[3] *See generally, Patent Case Management Judicial Guide (3d Ed.),* Federal Judicial Center (2016), Chapter 1.

particularly in light of continuing advances by inventors (and their counsel) in the sophistication and complexity of their claimed inventions.

Directly pertinent here is the relatively recent America Invents Act of 2011. That Act has dramatically altered the patent litigation landscape. Of particular significance is the creation of processes for adversarial re-examination of granted patents within the USPTO. These processes may occur in parallel with federal court litigation, heightening the tension and potential for conflicting rulings in the different forums.

*Inter Partes* Review (IPR), the agency process invoked by Defendant, is a procedure established by the America Invents Act. *See generally* 35 U.S.C. §§ 311–319. Upon petition, an IPR allows any party, other than the patent owner, to challenge patentability by filing a petition with the PTAB within one year of being served with a complaint alleging patent infringement. 35 U.S.C. § 311(a)–(b). The party challenging a patent's patentability may do so by challenging the validity of the claims under 35 U.S.C. § 102 or § 103. Upon the filing of a petition for IPR, the patent owner has three months to file a preliminary response opposing the request,[4] which becomes part of the patent's intrinsic record.

---

[4] A patent holder can speed the consideration by responding sooner. There is no indication in this case that Plaintiffs plan to respond before the deadline.

After the filing of the patent owner's preliminary response, the PTAB has three months to decide whether to institute the IPR. 35 U.S.C. § 314(b)(1). In this case, that deadline is no later than March 23, 2023. The PTAB will institute the IPR if it determines that "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). Upon institution, the PTAB must issue a final written decision within one year of instituting the IPR. 35 U.S.C. § 316(a)(11). That final written determination must address every ground raised in the instituted IPR petition. *See SAS Inst., Inc. v. Iancu,* 200 L. Ed. 2d 695, 138 S. Ct. 1348, 1359–60 (2018). Following the final written determination, the petitioner is estopped from raising invalidity arguments "on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review." 35 U.S.C. § 315(e)(2).

The Supreme Court has approvingly examined the statutory IRP process on at least four occasions:

*Cuozzo Speed Techs., LLC v. Lee,* 579 U.S. 261, 136 S. Ct. 2131, 195 L. Ed. 2d 423 (2016);

*SAS Inst., Inc. v. Iancu*, 200 L. Ed. 2d 695, 138 S. Ct. 1348 (2018);

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,* 200 L. Ed. 2d 671, 138 S. Ct. 1365 (2018); and

*Thryv, Inc v. Click-To-Call Techs., LP,* 206 L. Ed. 2d 554, 140 S. Ct. 1367 (2020).

While these decisions do not address the matter of staying litigation, they do reflect a judicial attitude recognizing the potential benefits of this new procedure for additional administrative review of disputed patents.

## IV. STANDARDS FOR STAYING LITIGATION

Agency consideration of patents in an IPR "competes" with litigation of patent suits in Article III courts. Yet, the two avenues of review must co-exist and, to at least some extent, coordinate and even complement their respective decision making. Unsurprisingly, defendants in patent cases often seek to stay court litigation once an IPR has been filed. Also unsurprisingly, patent plaintiffs often oppose such stays. The statute is silent about staying pending civil litigation when an IPR petition is filed, though it addresses other scenarios where litigation and Patent Office review may overlap. And, as noted above, IPR petitions cannot be filed more than a year after a petitioner has been sued, presumably to place an outside limit on potential interference with pending cases.

In the absence of statutory guidance, caselaw has identified some general principles in weighing the competing values and goals affected by consideration of a stay. Counseling against a stay is the general principle giving a plaintiff his day in Court. More specifically, having gotten a patent, the inventor should be able to

enforce it. The legal and practical value of a patent is fragile and likely to diminish over time.

But patents are in derogation of and limit competition and free enterprise. Invalid or improperly understood patents can unfairly tilt the marketplace. Thus, it may be problematic for courts to litigate patents that are subject to further review and revision by the agency charged with doing so.

Courts have always had the role to review and interpret patents, thereby creating potential for duplicated effort and contrary results from agency processes. This possibility is heightened where, under IPR, the agency is taking a second look at the patent—with adversarial presentations for the first time. One method to ameliorate discord is consideration of staying the litigation.

The Federal Circuit has recognized the decision to stay litigation pending IPR (or other review) is committed to the sound discretion of the trial court and that magistrate judges are authorized to rule on requests for stays. *In re Corel Software LLC,* 778 F. App'x 951 (Fed. Cir. 2019). Additionally, courts considering whether to grant a stay are not limited to a restricted list of factors or considerations in exercising their discretion. *Murata Machinery USA v. Daifuku Co., Inc.,* 830 F.3d 1365, 1367 (Fed. Cir. 2016). *Cf. Smartflash LLC v. Apple, Inc.,* 621 F. App'x 995 (Fed. Cir. 2016).

These conflicting policy objectives and the wide degree of discretion accorded trial courts have created a somewhat esoteric body of caselaw on the matter of staying litigation while the IPR process plays out. Certain general statements of principles have emerged:

1. the stage of the litigation;

2. prejudice or tactical disadvantage to plaintiff; and

3. scope of IPR and potential for simplification of issues.

*See, e.g., 3rd Eye Surveillance, LLC v. United States,* 160 Fed. Cl. 636 (2022). In *3rd Eye Surveillance*, the court discussed these principles:

> As a general matter, the court's authority to issue a stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936). In addressing a request for a stay, the court must take account of its "paramount obligation to exercise jurisdiction timely in cases properly before it." *Cherokee Nation of Oklahoma v. United States,* 124 F.3d 1413, 1416 (Fed. Cir. 1997). Additionally, the court must "identify a pressing need for the stay," and "balance interests favoring a stay against interests frustrated by the action." *Id*. . . . The court is to consider the circumstances of the case to determine whether granting a stay is appropriate, including "the stage of the litigation; whether a stay will simplify the issues; and whether a stay . . . will [unduly] prejudice or present a clear tactical disadvantage to the nonmoving party." citation omitted). It is "the court's discretionary prerogative to balance considerations beyond those captured by the three-factor stay test." *Murata Mach. USA v. Daifuku Co.,* 830 F.3d 1357, 1362 (Fed. Cir. 2016) (citations omitted). The court's ultimate interest is to "balance the competing interests of the parties and the interest of the judicial system (citations omitted)." Although a stay is never required, it may be "particularly justified where the outcome of the reexamination would be likely to assist the court in determining

patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue."

*Id.*

Unfortunately, the high level of generality of these principles has led to uneven application in specific cases, rendering caselaw less helpful than might be expected. Predictably, in this case, both parties cite the same principles to argue opposite results.

The analysis that follows is intended to go from the general principles to the particular posture and circumstances of this case as the Court finds it. Thus, the Court looks to the detailed and practical status of the litigation, this Court's approach to case management and calendaring, the status and scope of the IPR petitions, the relations between the parties and the relative urgency of the case, and potential scenarios leading to final resolution. Notably, the court **does not** look to perceptions of the relative merits of the patents-in-suit or the challenges to them.

## V. ANALYSIS

*Pertinent Circumstances—* In no particular order, the following observations are of significance in this case. This Court favors active case management that includes the early setting of firm trial dates (disfavoring continuances without good cause); the IPRs were filed relatively early in the case; the litigation has gone forward with some discovery and claim interpretation briefing; a case schedule (with a designated trial calendar) including discovery deadlines and other pretrial procedures (including patent specific items) has been set; the schedule includes more than the

13

typical time between the close of discovery and trial;. the motion to dismiss is still pending; while the parties are direct competitors, there has been no motion for a preliminary injunction; there are no non-patent litigation issues or parties; discovery is still at early stage; the IPRs are comprehensive with the potential to invalidate or significantly alter the patents; the decision whether to institute IPR is still some months off, but it is statutorily due in March 2023, not some indefinite or aspirational time.

*Scenarios*—Next, the Court considers how a stay or its absence might affect getting this matter to a final resolution efficiently. Various alternative paths are presented.

If there is no stay, this case will proceed with respect to the patents as granted using the schedule already in place, without regard to what the agency decides. Necessarily, this will entail substantial expense to both parties and a significant devotion of judicial resources in considering of the array of issues typically presented in a major patent case. If the IPR does not go forward, this would be litigation in the ordinary course. However, if the IPR *does* proceed to a final agency decision, there is a substantial likelihood that large parts of the litigation activity will be for naught due to the PTAB decision on claims and validity of the patents. There would be a very real possibility of needing to reconsider decisions or even a re-trial.

Another approach would be to have the case go forward until such time as the PTAB decides whether to institute the IPR. Then, if there is an IPR, the issue of a stay could be re-evaluated. It is unclear how much discovery, motion practice, expert preparation and demands on judicial resources this would entail, including the risk of having to re-start or re-do much of the work later.

A third way would be to stay the case (with possible exceptions for certain activities) until the PTAB acts. This would, by definition, leave the case temporarily stalled but would avoid potentially wasted work. Additionally, because the current schedule has some extra pretrial time, it would be feasible to fit in discovery and the other contemplated deadlines and activities if the case were re-opened in the event there is no IPR. At worst, only a short delay in trial would be needed. In this scenario, continuation (or modification) of the stay would be subject to modification based on the actual scope of the hypothesized forthcoming IPR.

*Application of General Principles*

Referring to the generalized statement of principles noted above, the Court concludes that this litigation, while it has proceeded, is still at a fairly early stage. Only minimal discovery has gone forward, and the Court has not delved into the nuts-and-bolts of the claims and defenses. Because the case could be restored to the trial calendar with little or no delay (given the available time already built into the pretrial schedule) should there **not** be a full agency proceeding, any prejudice or disadvantage

to the Plaintiffs would also be minimal. Discovery and other pretrial matters (including the *Markman* hearing) could be completed by pushing back certain deadlines without affecting the trial date. Though not controlling, the absence of a motion for preliminary injunction suggests a lack of compelling urgency and further suggests that a damages award would be sufficient ultimate remedy for any on-going infringement. Finally, the petitions seeking IPRs are comprehensive, covering all the patents-in-suit. If IPRs are instituted, the ensuing agency decision on the scope or validity of the patents would very likely simplify and (it is hoped) clarify issues for the Court to deal with.

## VI. CONCLUSION

Accordingly, it is **ORDERED** that the Motion to Stay is **GRANTED, in part.** The case is stayed until the determination whether to institute the IPR process is made by PTAB. The parties are **DIRECTED** to file status reports every 60 days (or forthwith in the event of a significant development). Upon the PTAB's decision, the Court will conduct a conference with the parties to discuss continuation of the stay or to reset the schedule as circumstances indicate.

Given this Order, the parties should advise the Court if they believe the impending mediation should be delayed.

**Done and Ordered** at Orlando, Florida on November 21, 2022.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record