UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SAM'S WEST, INC.; and
WALMART APOLLO, LLC,

    Plaintiffs,

v.

BJ'S WHOLESALE CLUB
HOLDINGS, INC.,

    Defendant.

Case No. 6:22-cv-587-WWB-RMN

## ORDER

This cause comes on for consideration on Plaintiffs' Motion to Lift Stay (Dkt. 124), filed June 14, 2023.[1] Defendants oppose. Dkt. 126. Upon consideration, the Motion is due to be denied.

## I. BACKGROUND

Walmart Apollo, LLC owns four patents that generally disclose and claim methods and systems that allow retail customers to use personal electronic devices like mobile phones as point-of-sale devices, thereby obviating

---

[1] Upon review, the Court deems the information provided in the motion and opposition sufficient to resolve the motion without argument in addition to that provided by the parties at the May 30, 2023, status conference. *See* Dkts. 122, 123. Plaintiffs' Motion for Oral Argument (Dkt. 125) is therefore denied.

the need for traditional cashers or self-checkout stations. Sam's West is the exclusive licensee of the patents.

Plaintiffs sue Defendant, BJ's Wholesale Club Holdings, Inc., because Defendant's mobile app (and a functionality later added to that app) allegedly infringe claims from each patent. While defending itself here, Defendant petitioned the U.S. Patent and Trademark Office's Patent and Trial Appeal Board ("PTAB") to review the patents.[2] *See* Dkts. 86, 87, 89, 90. Defendant also moved for a stay of this case. Dkt. 91.

The Court granted Defendant's motion to stay on November 21, 2022. Dkt. 108. In granting the stay, the Court explained that a stay was warranted in view of the early stage of the case, the substantial nature of the challenges asserted in the review petitions, the deadline for initiation of the reviews imposed by statute, and the potential to simplify the claims and defenses that the Court would need to address in this litigation. *See id.* at 13–14, 15–16.

---

[2] These administrative proceedings, called inter partes reviews, were created by Congress in the Leahy-Smith American Invents Act. *See generally SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1353 (2018) (explaining the history of administrative review processes and the procedure for inter partes review). An inter partes review begins when someone who is not the owner of a patent files a petition asking the PTAB to review the patentability of one or more claims in a patent. The patent owner then may file a preliminary response to the petition. The PTAB will institute an inter partes review if the petition demonstrates there is a reasonable likelihood that the petitioner would prevail with respect to at least one challenged claim. If the PTAB initiates a proceeding, the board will issue a final determination within a year or, if there is good cause, a year-and-a-half.

The PTAB subsequently initiated five of seven reviews requested by Defendant. As a result, the PTAB is now considering the patentability of every claim in three of Plaintiff's patents, U.S. Patent No. 10,368,187 ("the '187 Patent"), U.S. Patent No. 10,368,188 ("the '188 Patent"), and U.S. Patent No. 10,803,435 ("the '435 Patent").[3] The PTAB declined to initiate a review of any claim from the fourth patent, U.S. Patent No. 10,121,133 ("the '133 Patent").

Plaintiffs now move to lift the stay as to their infringement claims based on the '435 Patent and the '133 Patent. Dkt. 124.

## II. LEGAL STANDARDS

A court may lift a stay if the circumstances supporting the stay have changed such that the stay is no longer appropriate. *Murata Machinery USA v. Daifuku Co., Inc.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016) (citing *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 74 (D.D.C. 2002)). When considering a motion to lift a stay, courts consider whether a stay will simplify the issues and streamline trial, unduly prejudice the non-movant, and the procedural posture of the case. *See id.* But courts can consider other factors,

---

[3] The parties have filed the PTAB decisions on some of the petitions. The decisions and other filings in these inter partes review proceedings are publicly available from the board's Patent Trial and Appeal Case Tracking System. https://ptacts.uspto.gov/ptacts/ui/public-search.

such as the burden of litigation on the court and the parties, as required. *See id*. at 1362.

### III. THE PARTIES' ARGUMENTS

Now that one of their four patents is "free and clear" of PTAB review, Plaintiffs ask the Court to partially lift the stay in this case so that they may litigate their infringement claims based on that patent, the '133 Patent, and a related patent, the '435 Patent. Dkt. 124 at 1, 10, 14. According to Plaintiffs, because the PTAB denied the review of the '133 Patent, they will be prejudiced by further delay of this case. *Id*. at 10–12. They also contend that the reviews instituted by the PTAB will not simplify the issues here, arguing that the instituted reviews of the '435 Patent will not shed meaningful light on the construction of claim terms used in the '133 Patent. *Id*. at 15–18. Nor will the reviews of the '435 Patent simplify the issues, argue Plaintiffs, because Defendants are estopped from advancing arguments made in the reviews here. *Id*. at 15–16. And, because the '133 Patent and '435 Patent come from the same family and share the same specification, the Court should lift its stay as to that patent too. *Id*. at 17–18.

Defendant counters that lifting the stay is unwarranted. First, according to Defendant, the PTAB should issue its final decision in the reviews of the '435 Patent after the close of discovery and before trial in this case, thereby creating a real possibility that the parties would need to revisit some of their

efforts. Dkt. 126 at 6–7. This is so because the claims of the '133 Patent and the '435 Patent share several claim terms, including the term "the server." *Id.* at 10–12. Defendant also disputes Plaintiff's understanding of the estoppel effect of the reviews, arguing that it is free to raise the exact same invalidity arguments against the '133 Patent because the PTAB declined to initiate a review of that patent. *Id.* at 13. Furthermore, Defendant asserts that any prejudice that Plaintiffs may suffer is due to their own litigation choices, and so the Court should give that factor little weight. *Id.* at 15–16, 18.

## IV. ANALYSIS

Setting aside the "stage of the proceeding" factor,[4] the Court considers whether a stay will simplify the issues and streamline trial, reduce the burden of litigation on the parties and the court, or unduly prejudice the non-movant, in that order.

---

[4] The weight to be given to the stage of these proceedings is the same now as it was when the stay was granted. This case is in its early stages. Although some discovery has been exchanged, the Court has not construed the patent claims and dispositive motions have not been filed. *See, e.g., Evolutionary Intel., LLC v. Livingsocial, Inc.*, No. 13-CV-04205, 2014 WL 2735185, at *2 (N.D. Cal. June 16, 2014) (the court declined to lift a stay and reasoned that the weight given to the "stage of the proceedings" factor remains the same). And because a stay has been entered, the case management deadlines previously set (including the trial date) will need to be reset once the stay is lifted. *See* Dkt. 114 (administratively closing the case).

## A. Simplification of the Issues

Plaintiffs assert infringement claims based on four different patents. Most of the claims from these patents are now under PTAB review. True, Plaintiffs successfully staved off a review of the claims of the '133 Patent, but that is just one of four patents asserted here. In their motion, Plaintiffs give no reason why the Court should bifurcate the claims in their First Amended Complaint other than that the PTAB declined to review one patent. All four patents are at issue in this case, and so all four patents should be considered when deciding whether to continue the stay.

In this light, the first factor—simplification of the issues—weighs heavily in favor of maintaining the stay. The PTAB has decided that there is a reasonable likelihood that at least one claim in each of the '187 Patent, the '188 Patent, and the '435 Patent is unpatentable. Between these three patents, a total of 59 claims are subject to potential cancellation or amendment. It is therefore reasonable to presume the outcome of the PTAB proceedings will likely impact the claims that will eventually proceed to trial here. The PTAB decisions in these reviews may even cancel all the claims from one or more patents, thereby greatly streamlining the issues this Court and the jury must consider before and during at trial. *See, e.g., Princeton Digital Image Corp. v. Konami Digital Ent. Inc.*, No. CV 12-1461, 2015 WL 219019, at *3 (D. Del. Jan.

14, 2015) (concluding that the "simplification of issues" factor weighs even more where the PTAB granted review of all but three asserted claims).

Plaintiffs point to PTAB proceedings statistics to argue that the benefits of inter partes review are less likely than they seem. Defendant points to statistics of its own, arguing inter partes reviews results in changes to claims most of the time. Neither argument is particularly compelling. The purpose of inter partes review is to allow the Patent Office "a second look" at its decision to grant a patent. *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 279 (2016). The review process "resolve[s] concrete patent-related disputes among parties" at the agency-level and, in Congress's view, is an efficient system for challenging patents that should not have been issued. *Id.* (citing H.R. Rep. No. 112-89, pt. 1, pp. 39–40 (2011)). Though the Court recognizes Congress did not intend on limiting patent owners from pursuing infringement actions while defending patents concurrently in inter partes reviews, it makes little sense to move forward here when so many claims from the patents asserted in this lawsuit are being reconsidered by the agency.

This holds true even if one focuses narrowly on the two patents that Plaintiffs wish to pursue now. Notwithstanding the fact that the '133 Patent is free and clear of agency review, the '435 Patent is subject to several inter partes reviews. It is not clear what claims, if any, of that patent will be left at the conclusion of those reviews. But it is reasonable to assume that at least some

of the '435 Patent's claims will be changed, narrowed, or cancelled. If anything, the inter partes reviews of the '435 Patent's claims have the potential to streamline the issues and claims asserted in this litigation, which is a sufficient basis to continue the stay.

And that holds true for the '133 Patent too. As Plaintiffs admit, that patent shares its specification with the '435 Patent. Dkt. 102 at 4. During its reviews of the '435 Patent, the PTAB will scrutinize the specification's disclosure when construing claim terms, determining priority dates for claims, and making patentability determinations. The PTAB's consideration of the specification's teachings will likely be useful when the Court considers the '133 Patent's specification and the parties' arguments based on that specification—even though such consideration may not be immediately binding on this Court. *See Gould*, 705 F.2d at 1342; *TAS Energy, Inc. v. San Diego Gas & Elec. Co.*, No. 12-cv-2777, 2014 WL 794215, at *4 (S.D. Cal. Feb. 26, 2014) (explaining an agency "decision 'is strong evidence that the court must consider in assessing whether the party asserting invalidity has met its burden of clear and convincing evidence'") (quoting *Evolutionary Intelligence, LLC v. Facebook, Inc.*, Nos. C-13-4202-SI, C-13-4204-SI, 2014 WL 261837, at *2 (N.D. Cal. Jan. 23, 2014)).

In sum, because the inter partes reviews instituted by the PTAB for the '187 Patent, the '188 Patent, and the '435 Patent have the potential to narrow

the claims and disputes at issue in this litigation, this factor weighs in favor of maintaining the stay.[5]

B.  **Litigation Burden**

Plaintiffs make no effort to support their proposed bifurcation of the claims in this lawsuit on efficiency grounds. Rather than waiting until all the reviews are complete, Plaintiffs would have the Court move forward on some infringement claims while maintaining the stay on others. Because this case has not advanced too far procedurally, Plaintiffs' request effectively asks for bifurcating this case. The Court sees no gain in efficiency where it and the parties must engage in multiple periods of discovery, multiple hearings addressing claim construction, multiple summary judgment motions, and (perhaps) multiple trials. *See, e.g., Fisher & Paykel Heathcare Ltd. v. Resmed Corp.*, No. 16-cv-2068, 2017 WL 3635106, at *3 (S.D. Cal. May 23, 2017) (noting "judicial economy does not warrant allowing the parties to resume litigation only on some of Plaintiff's patents now, and then later, resume litigation on its remaining patents").

---

[5] The Court does not find the arguments regarding estoppel under 35 U.S.C. § 315(e)(2) convincing. Theoretically, this statutory estoppel should narrow the issues for this Court to address. But in this case, estoppel could serve to complicate this litigation because it would apply to three of the four patents. *See Click-to-Call Techs. LP v. Ingenio, Inc.*, 45 F.4th 1363, 136–69 (Fed. Cir. 2022) (estoppel under 35 U.S.C. § 315(e)(2) applies to grounds that are actually litigated or reasonably could have been made in inter partes reviews).

### C. Undue Prejudice

Nor does the Court find Plaintiffs will be unduly prejudiced by continuing the stay in this case. Although Plaintiffs and Defendants are direct competitors, Plaintiffs have not established that a continued stay would cause them harm in the marketplace that could not be addressed through a final judgment. *See, e.g., CANVS Corp. v. United States*, 118 Fed. Cl. 587, 596 (2014). Courts typically find prejudice where the alleged infringer sells a competing product. That is not the case here. Defendant offers the allegedly infringing app to consumers to streamline sales at its stores. If Plaintiffs succeed in this case, then Defendant may be permanently enjoined from offering the infringing functionality in its app. Whatever goodwill or market share Defendant accrues from offering its app to the public over the course of this case thus can be remedied with a final judgment.[6]

---

[6] The Court is not convinced that Plaintiffs' failure to move for preliminary injunctive relief should have any bearing on the decision to lift the stay. As a general matter, that decision could have been made for various reasons. *See, e.g., Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-cv-02863, 2011 WL 3267768, at *6 (N.D. Cal. July 28, 2011). Circumstances also change, and so a party may find it necessary to seek preliminary injunctive relief later in a case. *See Animal Welfare Inst. v. Martin*, 588 F. Supp. 2d 70, 94 (D. Me. 2008) (finding no undue prejudice where plaintiffs delayed filing suit and moving for preliminary injunctive relief more than a year after learning of the events that form the basis of their claims). Finally, this argument is only marginally relevant, if at all. Rather, the key question is: does continuing the stay cause some harm that cannot be addressed through a final judgment?

\* \* \* \* \* \*

In sum, Plaintiffs instituted this action as a broad attack on Defendant's mobile app, asserting infringement claims based on four separate patents.

## V. CONCLUSION

Accordingly, it is **ORDERED**:

1. Plaintiffs' Motion to Lift Stay (Dkt. 124) is **DENIED**;

2. Plaintiffs' Request for Oral Argument (Dkt. 125) is **DENIED**; and

3. The Court find good cause to reset the schedule for filing joint status reports. The parties are directed to file a joint status report on October 1, 2023, and every 60 days thereafter (or forthwith in the event of a significant development). The Court will conduct a conference with the parties to discuss continuation of the stay or to reset the schedule at the conclusion of the inter partes reviews by the PTAB.

**DONE** and **ORDERED** in Orlando, Florida, on July 31, 2023.

_____
ROBERT M. NORWAY
*United States Magistrate Judge*

Copies to:

Counsel of Record